IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 16, 2026

## STATE OF TENNESSEE v. BRUCE ALLEN WATTS

**Appeal from the Circuit Court for Lincoln County**
**Nos. 22-CR-140, 24-CR-37      Forest A. Durard, Jr., Judge**

_____

### No. M2025-01266-CCA-R3-CD
_____

Defendant, Bruce Allen Watts, appeals the trial court's decision revoking his probation and ordering him to serve the balance of his effective fourteen-year sentence in confinement.  Upon our review, we conclude that the trial court did not abuse its discretion and, therefore, affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Donna Hargrove, District Public Defender; and William J. Harold, Assistant District Public Defender, for the appellant, Bruce Allen Watts.

Jonathan Skrmetti, Attorney General and Reporter; Julia A. Johnson, Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval and Grant Benere, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This appeal arises from the revocation of Defendant's effective fourteen-year term of probation imposed for his convictions of vandalism and theft.

### Factual and Procedural Background

On December 6, 2022, Defendant pleaded guilty in Lincoln County Circuit Court case number 22-CR-140 to one count of vandalism of property valued at more than $2,500 but less than $10,000 in exchange for a sentence of four years to be served as 210

days' incarceration followed by supervised probation. Defendant's supervision was transferred to Alabama on April 19, 2023.

On February 20, 2024, Defendant pleaded guilty in Lincoln County Circuit Court case number 24-CR-37 to theft of property valued at $10,000 or more but less than $60,000 in exchange for a sentence of ten years' probation to be served consecutively to Defendant's four-year sentence in case number 22-CR-140. On that same date, the trial court revoked and reinstated Defendant's probation in case number 22-CR-140. Defendant was also extradited to Alabama to face a charge of attempted theft.

On April 24, 2024, Defendant was "furloughed" to an inpatient drug treatment program managed by the Salvation Army. Five months later, Defendant was dismissed from the treatment program for fighting with another patient. Following his dismissal, Defendant failed to report to the jail as required and then failed to appear at an Alabama revocation hearing on October 16, 2024. A warrant was issued for Defendant's arrest and attempts to locate him at either the Salvation Army program or his last known address were unsuccessful.

On January 2, 2025, Defendant's Tennessee probation officer filed a probation violation report alleging a zero tolerance violation based on Defendant's absconding from his supervision in Alabama following his dismissal from the inpatient treatment program. The violation report also alleged that Defendant violated his probation terms by garnering a new arrest for attempted theft in Alabama on August 2, 2023, by failing to notify his probation officer of a change of address, and by failing to pay court-ordered restitution in the amount of $3,716.37. A probation violation warrant issued on January 17, 2025.

Following his arrest in Laredo, Texas, in February 2025, Defendant waived extradition and agreed to return to Tennessee to face allegations that he violated his probation. Also following his arrest, amended violation reports added an allegation that Defendant violated his probation by leaving the county/state of his supervision without permission. After he returned to Lincoln County, the trial court denied Defendant's March 2025 request to be furloughed to an inpatient rehabilitation facility in Huntsville, Alabama.

At the July 24, 2025 revocation hearing, Defendant admitted the violation allegations and asked the trial court to put the four-year sentence into effect but suspend the ten-year sentence to probation. Defense counsel explained that Defendant sought entry into recovery court in case number 24-CR-140 but was unable to enter because of a hold based on the then-pending charge in Alabama. The Alabama trial court refused to allow Defendant to enter the recovery court program in Lincoln County and instead placed him in an inpatient treatment program at a Salvation Army facility in Huntsville,

Alabama. The State asked the trial court to revoke both terms of probation and order Defendant to serve the sentences in confinement.

The thirty-six-year-old Defendant testified that he began using drugs when he was offered marijuana by his mother at age twelve. Defendant said that his mother's boyfriend sold marijuana and that his mother shared it with him freely. Within a short time, he was smoking a quarter of an ounce of marijuana every day. At fifteen, Defendant began to drink alcohol. Around that same time, he started smoking crack cocaine after a co-worker offered it to him.

Defendant agreed that he received a twelve-year sentence in 2007 that required him to serve one year of incarceration followed by probation. While serving his term of incarceration, Defendant pleaded guilty to a charge of introducing a weapon into a penal institution in exchange for a sentence of four years. Defendant was ordered to serve the resulting sixteen-year sentence in confinement. He testified that he began using methamphetamine in prison in 2010. Following his release from prison, Defendant began using fentanyl, and he was hospitalized for fentanyl overdose "at least maybe five times."

Defendant attributed his using drugs in prison to his witnessing the sexual assault of another inmate, which triggered memories of the time he was sexually assaulted at age eight. Defendant said that although he attended therapy before going to prison, he had been unable to discuss the sexual assault, which prevented him from having "a normal relationship" with his family or with women in general. He stated that he was placed on medication to treat schizophrenia and antisocial personality disorder prior to his incarceration but that the prison "took me off my psychotropic medication." He said that he turned to methamphetamine because "it constantly makes my mind race and pulls my mind in [] 100 different directions," leaving him no "time to focus on the voices so it kind of drowns them out." Defendant testified that he had been placed back on medication at the Lincoln County Jail and that it appeared to be helping.

Defendant said that his drug use increased after he was released from prison in 2021 because he "had better access to them, drugs were cheaper on the outside." He admitted that he resorted to theft to feed his drug habit, which led to the charges in this case. He said that following his arrest in 2023, the trial court agreed for him to be placed in recovery court but that he was unable to enter the program because of the pending Alabama charge. Before entering a plea on that charge, Defendant was furloughed to a Salvation Army inpatient treatment program. He described the program as a homeless shelter that offered a single one-hour class each day. He said that the program did not include any classes teaching coping skills or impulse management.

Defendant admitted that he was asked to leave the Salvation Army program but said that the treatment specialist told him that he would be accepted back into the

program "because she did not agree with me being kicked out in the first place." He conceded that after he was dismissed from the program, he went to Texas because drugs were much cheaper.

Defendant testified that during his most recent incarceration, he realized that his drug use had "destroyed" his life. He said that he wanted help with his drug addiction and asked the trial court to "give me a punishment in a way where it still leaves a window open for me to receive the help with my drug problem." He also admitted that he needed mental health treatment. Defendant conceded that the Alabama charge for which he was originally furloughed was still pending at the time of the revocation hearing.

During cross-examination, Defendant stated that he last used drugs on February 2, 2025, and that he used "black tar heroin." He said that he would go back to the Salvation Army treatment program "if there was not another option" because "[a]t least I'm not on drugs." He admitted that he was expelled from the Salvation Army program for fighting with another resident but said that someone from the program told his attorney that "they felt I was dealt a wrong hand." He conceded that instead of reporting to jail as directed, he began using drugs immediately. He testified that he "already had it in my mind" that the court would not "recognize" that he had been "wrongfully dismissed" from the program and that, given his belief that he would be sent "to prison anyway[]," he decided that he "might as well go and get high." He went to Laredo, Texas, on the Mexican border, and he had no plans to return.

Defendant said that he was arrested in Laredo after a woman with whom he was using drugs accused him of assaulting her. Although he was not charged with assault, Texas authorities ran a check on his name and discovered the outstanding warrant for his arrest in Tennessee.

Defendant said that he and his sister were still talking despite that they did not have a good relationship and admitted that he had spoken to her by phone while he was in jail. In one call, Defendant told his sister that he had planned to provide Texas authorities "with a fake name" but did not do so because he "didn't have a social security number to go with the fake name." He admitted that he was wanted in Alabama but said that he wanted to obtain a rehabilitation placement before "the warrants hit." Defendant added, "I'm not gonna lie. After I'm done with it all, I'm going back to Laredo, and we'll do it all again in two years." When his sister asked what he meant, he said, "They'll have to catch my a** down the road." Later in the conversation, Defendant said that he had a feeling that he was "about to be caught up" and that he should have left Laredo before he was arrested in Texas. He added that he would follow that feeling "next time." He stated that after completing rehab, he planned to "stack my money up" and "do it all again."

In a second call, Defendant told his sister that his attorney told him that the court was likely to "put your sentence in effect and send you back to prison." He insisted that he should not be ordered to serve the balance of his sentence "just on a motherf***ing technical violation." Defendant told his attorney that he would not "go back to prison for fourteen years for that dumb*** s***." He also told his sister that he used different addresses for his Tennessee probation and his Alabama probation. In that same call, Defendant noted again that he did not provide Texas authorities with a "fake name" because he did not have a "fake" social security number. Defendant also said that after he was released, he was going to go back to Laredo and "kick this b****'s teeth in," referring to the woman who accused him of assault. He said that he "refused" to serve the fourteen-year Tennessee sentence followed by the ten-year Alabama sentence.

Defendant denied that he intended to abscond from treatment. He admitted that he did not want to spend the next twenty years in prison but denied that was the reason he was asking for a rehabilitation placement. Defendant admitted that he failed to successfully complete previous sentences involving release into the community. Nevertheless, he insisted that he was a good candidate for alternative sentencing, stating, "I seen people with worse history than I have being given rehab."

Defendant agreed that he wanted to return to Texas despite that he did not have a job or place to live there. He insisted that he "fell in love with the scenery there, with the people there, [and] with the culture" but added that it was "a known fact" that "drugs are cheaper" in Texas. Defendant admitted that he had no real work history.

Lincoln County Sheriff's Office employee Chris Thornton testified that transporting Defendant to Lincoln County from Texas cost the county $3,831.00.

Catina Fox, who previously worked as the Recovery Court Coordinator in Lincoln County, testified that in 2024, she believed Defendant to be a good candidate for recovery court. Defendant was unable to enter the recovery court program due to his pending charges in Alabama.

At the conclusion of the proof, the trial court sympathized with Defendant's traumatic childhood and history of drug use and noted that this case presented "a bad mental health situation" and "a bad addiction situation" as well as "repeated violations of alternative sentencing." The court said Defendant's placement in the Salvation Army program in Alabama instead of the recovery court program in Lincoln County "weigh[ed] heavy on the Court" because that program is "not near the quality of what we have here." The court told Defendant that "your criminal history has just caught up with you." The court stated that there were "ample reasons" that Defendant was not a suitable candidate for alternative sentencing but said that his flight to Texas after being dismissed from the Salvation Army program was troubling. The court found that Defendant's flight proved

he could not be trusted "to be out and be in one of these places." The court observed that shortly after it approved Defendant's placement in recovery court, "you went to Alabama and then you ran off." Ultimately, the court found that "there is just too much in this particular case" weighing against a further grant of alternative sentencing. The court ordered Defendant to serve the remainder of his sentence, less any jail credits, in confinement and ordered Defendant to pay $3,831.00 in restitution for the cost of his transport from Texas to Tennessee.

## Analysis

In this appeal, Defendant asserts that the trial court erred by ordering that he serve the balance of his sentence in confinement. The State contends that the trial court did not err. We agree with the State.

"[A] trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release." *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005) (citing Tenn. Code Ann. § 40-35-311(e)). After determining "whether to revoke probation," the trial court must "determine the appropriate consequence upon revocation." *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). We review probation revocation decisions under an abuse of discretion standard with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id.* at 759. Thus, when a trial court articulates sufficient findings on the record to allow for "a meaningful review," its decision is presumed reasonable and, absent an abuse of discretion, will be upheld. *Id.* "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010); *see Dagnan*, 641 S.W.3d at 758. If the trial court fails to articulate its findings on the record, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or . . . may remand the case to the trial court to make such findings." *Dagnan*, 641 S.W.3d at 758.

When, as here, the defendant acknowledges violating the terms of his probation, a sufficient basis exists to support the revocation of his probation. *See State v. Evans*, No. E2024-00392-CCA-R3-CD, 2025 WL 354637, at *1, *3 (Tenn. Crim. App. Jan. 31, 2025), *no perm. app. filed*; *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*. Additionally, when, as here, a "probationer commits a non-technical violation, a trial court's authority to impose a consequence for that violation is broad." *State v. Rand*, 696 S.W.3d 98, 103 (Tenn. Crim. App. 2024).

The determination of the appropriate consequence for the violation examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation. *See id.* The trial court may consider the number of previous revocations, the seriousness of the violation, the defendant's criminal history, the defendant's character, and the defendant's amenability to correction. *See Dagnan*, 641 S.W.3d at 759 n. 5. "Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation." *Rand*, 696 S.W.3d at 106 (first citing Tenn. Code Ann. § 40-35-102(3)(C); and then *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022)). Further, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *3 (Tenn. Crim. App. Feb. 28, 2023) (citation omitted), *perm. app. denied* (Tenn. June 29, 2023); *see also State v. Connor*, No. M2024-00778-CCA-R3-CD, 2025 WL 1166508, at *3 (Tenn. Crim. App. April. 22, 2025) (citing Tenn. Code Ann. § 40-35-311(e)(2)), *no perm. app. filed*.

The trial court placed on the record sufficient findings to allow for meaningful review, and Defendant does not contend otherwise. Consequently, we will presume that the trial court's decision was reasonable. Furthermore, Defendant does not challenge any of the trial court's findings but argues that those findings were insufficient to support a sentence of full incarceration. Contrary to this assertion, however, the record establishes that Defendant violated his partially suspended sentence in 2007 by introducing a weapon into penal facility, and rather than use the resulting confinement to rehabilitate himself, he began using methamphetamine. Within months of his release from prison, Defendant was using drugs and committing crimes. He violated the four-year probationary term imposed in case number 22-CR-140 by committing the offenses in case number 24-CR-37, but the trial court still gave him another chance by approving him for entry into recovery court. Although Defendant did not have the opportunity to enter that program, he was placed in a rehabilitation program in Alabama and failed to utilize it to rehabilitate himself. Even if, as Defendant contends, he was wrongfully terminated from that program, that does not excuse his absconding to Texas so that he could save money on his drug purchases. Defendant's calls with his sister establish that he did not intend to return to Tennessee to face the allegations against him or to receive help for his mental illness and drug addiction. Instead of taking responsibility for his absconding, he blamed the woman who called the police and lamented the fact that he did not have a fake social security number to provide to Texas authorities so that he could escape detection. We agree with the trial court that "there is just too much in this particular case" to justify anything other than execution of the sentences as originally imposed. Under these circumstances, the trial court did not abuse its discretion by ordering that Defendant serve the balance of his sentence in confinement.

- 7 -

**Conclusion**

Based upon the foregoing, the judgments of the trial court are affirmed.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
